

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00440-CV

MESQUITE SERVICES, LLC, BLACK WATER RENTALS, LLC, AYRIC WRIGHT, INDIVIDUALLY, AND GENE HORNBECK, INDIVIDUALLY, APPELLANTS

V.

STANDARD E&S, LLC D/B/A STANDARD ENERGY SERVICES, APPELLEE

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2019-536,645, Honorable William C. Sowder, Presiding

September 15, 2020

CONCURRING OPINION

Before QUINN, C.J., and PARKER and HATCH,[1] JJ.

"The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2020)); *see also White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 Tex. App. LEXIS 7097, at *11

---

[1] Honorable Les Hatch, Judge, 237th District Court, sitting by assignment.

(Tex. App.—Dallas Aug. 31, 2020, no pet. h.). To invoke the TCPA, such lawsuits must involve a "communication" as defined by the TCPA. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1) (West 2020).[2] For purposes of the exercise of free speech, the communication must be made in connection with a "matter of public concern." § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government, a public official or public figure; or a good, product, or service in the marketplace. § 27.001(7). However, not every communication bearing some conceptual or tangential relation to one of the broad categories set out in section 27.001(7) necessarily regards a matter of public concern. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC,* 591 S.W.3d 127, 137 (Tex. 2019).

For purposes of the "exercise of the right of association," the TCPA requires "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Act of June 17, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961 (amended 2019) (current version at § 27.001(2) (West 2020).[3] The nature of the communication must involve public or citizen's participation. *See Dyer v. Medoc Health Servs., LLC,* 573 S.W.3d 418, 426 (Tex. App.—Dallas 2019, pet. denied).

---

[2] Further references to provisions of the Texas Civil Practice and Remedies Code will be by reference to "section __" or "§ __."

[3] The definition of the "exercise of the right of association" was amended by the legislature in 2019; however, the amendment only applies to legal actions filed on or after the September 1, 2019, effective date of the amendment. *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, §§ 1, 11, 2019 Tex. Gen. Laws 684, 687.

This Court in its majority opinion relies on a previous Seventh Court of Appeals opinion to support its finding that "under the version of the TCPA applicable to this case, claims like those asserted by Standard are covered because they are based on or related to appellants' exercise of their free speech (based on their discussions with current Standard customers) and association (based on their association with current Standard customers as well as current and past Standard employees) rights." Citing *In re Krause Landscape Contrs., Inc.,* 595 S.W.3d 831 (Tex. App.—Amarillo 2020, no pet.). The majority says, "[W]e believe that Standard's claims are not based on communications with a limited business audience concerning a private contract dispute" and thus, are a matter of public concern. But the majority does not explain *how* a matter of public concern is involved, instead relying on *Krause*, which relied on other courts' opinions. In *Krause*, this Court found the claims by an employer against former employees were "based on or related to their exercise of their free speech, concerning their discussions with current Krause clients, and association, concerning their association with current Krause clients and employees . . . ." *Id.* at 837. No doubt the majority had ample support for its conclusion in *Krause*, as well as this case, including as recently as August 26, 2020. *See Lara v. Streamline Ins. Servs., LLC,* No. 03-19-00474-CV, 2020 Tex. App. LEXIS 6843, at \*6-9 (Tex. App.—Austin Aug. 26, 2020, no pet. h.)*; see also Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177, 185 (Tex. App.—Tyler 2018, no pet.); *Grant v. Pivot Tech. Solutions, Inc.*, 556 S.W.3d 865, 880-81 (Tex. App.—Austin 2018, pet. denied); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 Tex. App. LEXIS 4653, at \*1 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied); *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 193 (Tex. App.—Austin 2017, pet. dism'd).

But I find the reasoning of our sister courts discussed below, addressing fact scenarios similar to the case at bar, and their application of *Creative Oil & Gas*, more sound. As such, I am of the opinion that this case does not involve a matter of public concern or public or citizen's participation, but instead involves only private business disputes. Therefore, the TCPA does not apply to this case. But because I am obligated to follow the prior precedent of this Court in *Krause*, I concur instead of dissent.

In *Goldberg v. EMR (USA Holdings) Inc.,* 594 S.W.3d 818, 823 (Tex. App.—Dallas 2020, pet. denied) (op. on reh'g), the Dallas court addressed almost identical facts to the case at bar. In that case, EMR, a scrap metal company, had purchased Goldberg's company, Gold Metal Recyclers. In connection with the sale, EMR secured non-disclosure and non-compete agreements from Goldberg. After waiting the prerequisite time period in the non-compete, Goldberg started a competitive business and hired some of EMR's employees who were former Gold Metal employees. EMR sued Goldberg, Goldberg's new company, and its former employees who now worked for Goldberg's company, for violations of the Texas Uniform Trade Secrets Act (TUTSA), breach of contract, breach of fiduciary duty, tortious interference with contract, and conspiracy. The court discussed at length the application of the TCPA to the plaintiff's allegations and held:

> Even though Defendants' business of purchasing and selling scrap metal may have many beneficial effects and involve matters of health or safety, and environmental, economic, or community well-being, the communications in this case did not involve those matters. Instead, they concerned Defendants' offers to buy or sell scrap metal. The communications did not discuss the benefits of recycling, nor did the communications seek to promote health or safety, or environmental, economic, or community well-being. Instead, they were private communications regarding private commercial transactions for the purchase and sale of a commodity, scrap metal. Plaintiffs' claims are

4

related to Defendants' use of Plaintiffs' confidential information to make purchases and sales. Plaintiffs' claims are not related to any communications by Defendants concerning the beneficial effects of recycling provided by the scrap-metal industry.

*Id.* at 830.

In *Palladium Metal Recycling, LLC v. 5G Metals, Inc.*, No. 05-19-00482-CV, 2020 Tex. App. LEXIS 5866, at *3 (Tex. App.—Dallas July 28, 2020, no pet. h.) (mem. op.), another scrap metal business dispute, relating to the termination of an oral joint venture agreement, plaintiffs' allegations against defendant included breach of partnership agreement, breach of fiduciary duties, tortious interference with an existing contract or, alternatively, with prospective business relations, common law misappropriation, and aiding and abetting. The court cited its decision in *Goldberg* holding:

Like the communications in *Goldberg*, the communications here do not concern the benefits of recycling or seek to promote health, safety, or environmental, economic, or community well-being. As we did in *Goldberg*, we conclude here that Palladium has failed to prove by a preponderance of the evidence that appellees' claims are based on, relate to, or are in response to its exercise of the right of free speech.

*Id.* at *13.

In *Bowman v. Fortitude Consulting Grp., Inc.*, No. 14-19-00686-CV, 2020 Tex. App. LEXIS 5189, at *12-13 (Tex. App.—Houston [14th Dist.] July 14, 2020, no pet. h.) (mem. op.), the court held that the trial court had properly denied a TCPA motion to dismiss since the communications with appellees' customers and clients related solely to the parties' pecuniary interests and had no potential impact on the broader marketplace or a public audience of potential buyers or sellers, and the communications were directed to a limited business audience of existing customers or tenants relating to a private

5

business dispute. This case involved allegations of business tortious interference with contracts or business relations between business co-owners.

In *Anders v. Oates*, No. 02-19-00116-CV, 2020 Tex. App. LEXIS 3044, at *19-21 (Tex. App.—Fort Worth Apr. 9, 2020, no pet.) (mem. op.), a case involving an interest purchase agreement and employment agreement, the court concluded that the alleged communications were not related to matters of political, social, or other concern to the community and instead related only to the pecuniary interests of the defendants. The *Anders* court looked to *Creative Oil & Gas* and noted that to be a matter of public concern for purposes of the TCPA, the matter must involve more than the private pecuniary interests of the parties. *Id.* Quoting *Creative Oil & Gas,* the court noted that a private contract dispute affecting only the fortunes of the private parties involved is simply not a "matter of public concern" under any tenable understanding of those words. *Id.* at *20.

In *United Dev. Funding, L.P. v. Megatel Homes III, LLC,* No. 05-19-00647-CV, 2020 Tex. App. LEXIS 4107, at *11 (Tex. App.—Dallas May 29, 2020, pet. filed) (mem. op.), another case addressing similar facts with an allegation of tortious interference with contract, the court found the dispute among several business entities to be one involving a private contract and therefore that the TCPA did not apply. The court stated "[e]very contractual dispute has the potential to affect a party's economic circumstances and, consequently, its ability to provide goods, products, or services in the marketplace. That does not mean communications about a private contract are a matter of public concern." *Id.*

Perhaps the most analogous facts to the case at bar were addressed by the Fifth Court of Appeals in *Collaborative Imaging, LLC v. Zotec Partners, LLC*, a suit where an employer alleged a former employee disclosed proprietary information to a new employer and used that purloined information to inflict competitive harm on it. *Collaborative Imaging, LLC v. Zotec Partners, LLC*, No. 05-19-01256-CV, 2020 Tex. App. LEXIS 4364, at *2-3 (Tex. App.—Dallas June 12, 2020, no pet.) (mem. op.). The causes of action included tortious interference with contractual relationships and breach of contract. The court held that neither freedom of speech nor the right of association were involved, and concluded that the alleged communications were not made in connection with a "matter of public concern." *Id.* at *8-9. The court noted that the nature of the communication must involve public or citizen's participation. *Id.* at *10.

Similar findings by other courts include *Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 275 (Tex. App.—Dallas 2015, pet. denied) (private communications about establishing new freestanding emergency room not exercises of right of association); *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 847 (Tex. App.—Dallas 2015), *rev'd on other grounds,* 512 S.W.3d 895, 901-02 (Tex. 2017) (per curiam) (communications made between a few Exxon supervisors, who joined together in the course and scope of their employment to internally discuss technician's alleged failure to meet the requirements of his job, did not have any element of citizen participation); *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 588 (Tex. App.—Fort Worth 2019, pet. denied) ("the plain meaning of the word 'common' in TCPA section 27.001(2)'s definition of 'the right of association' requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit"); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d

7

at 428 (communications discussing allegedly tortious conduct not a matter of public concern, even though tangentially related to a matter of public concern simply because the proprietary and confidential information that was to be misappropriated belonged to a company in the healthcare industry or because the alleged tortfeasors hoped to profit from their conduct); *Brugger v. Swinford*, No. 14-16-00069-CV, 2016 Tex. App. LEXIS 9155, at *8 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.) (concluding communications made in connection with business dispute were not matter of public concern under TCPA).

This Court recently has found no public concern in a case involving a dispute with business co-owners. *Tex. Custom Wine Works, LLC v. Talcott,* 598 S.W.3d 380 (Tex. App.—Amarillo 2020, no pet.). In a case involving claims for fraud, promissory estoppel, and breach of fiduciary duty, this Court held that the claims were not subject to dismissal under the TCPA because the parties' communications involved no matter of public interest but, instead, related only to private business transactions affecting one company and its internal operations. *Id.* at 387. While the case at bar involves two separate companies, instead of disagreements by co-owners of the same company like in *Talcott,* I believe the application of the TCPA language and case law therein on public concern is consistent with the intent of the legislature in enacting the TCPA. This Court concluded that the legislature intended for the right of association to require some degree of group participation involving an expression about a matter of public interest. *Id.* at 386. This Court went on to say that the nature of the communication between individuals who join together must involve public or citizen's participation. *Id.* "[C]onstruing the TCPA to find a right of association in this case simply because there are communications between

8

parties with a shared interest in a private business transaction does not further the TCPA's purpose to curb strategic lawsuits against public participation." *Id.* at 387 (quoting *Perlman v. EKLS Firestopping & Constr., LLC*, No. 05-18-00971-CV, 2019 Tex. App LEXIS 5485, at *8-9 (Tex. App.—Dallas June 28, 2019, no pet.) (mem. op.)). In other words, for an exercise of the right of association to trigger the TCPA's protections, it must involve more than a handful of individuals communicating about a private business deal. *Id.*

As mentioned above, the Texas Supreme Court has addressed this issue in *Creative Oil & Gas,* where it held that the lessee's and operator's counterclaims allegedly involving the exercise of free speech were not covered by the TCPA, as they were based on private business communications to third-party purchasers of a single well's production. 591 S.W.3d at 137. The Supreme Court found that these communications, with a limited business audience concerning a private contract dispute, did not relate to a matter of public concern under the Act. *Id.*

I believe a proper application of the TCPA renders it inapplicable to Standard's causes of action in this case. The communications between Standard's former employees and customers with Mesquite were of a private business matter and not one of a public concern. The dispute affects only the fortunes of the private parties involved; it has no connection with the general public. There is no opportunity for the public to participate. The decisions and communications are of a purely commercial nature and have no real effect on the public except for a tangential effect on the marketplace, which is not enough to make it a public concern. If this were so, every decision made by a business would be a matter of public concern for the purposes of the TCPA. *Creative Oil*

9

*& Gas* instructs us otherwise. Additionally, the private communications do not implicate an environmental, health, or safety concern that has public relevance beyond the pecuniary interest of the private parties involved. Since the purpose of the TCPA is to curb strategic lawsuits against public participation, dismissing this case under the TCPA would be improper. This is a meritorious business suit that does not implicate the TCPA.


Les Hatch
Justice